UNITED STATES DISCTRIC COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

JAMES BELL,

                              Plaintiff,

              -against-

THE CITY OF NEW YORK; NEW YORK CITY
POLICE COMMISSIONER RAYMOND KELLY;
MAYOR MICHAEL BLOOMBERG; NEW YORK
CITY POLUCE OFFICER MARCOS GONZALEZ
SHIELD #27220; NEW YORK POLICE OFFICER
JESSICA RIVERA-CAICEDO SHIELD#30298;
NEW YORK POLICE OFFICER JAMES GILSON
SHIELD #8085; NEW YORK POLICE OFFICER
CARL BENNETT SHIELD #29180;NEW YORK
CITY POLICE OFFICER JOHN DOE #3

                              Defendants.

------------------------------------------------------------x

**SECOND AMENDED COMPLAINT**

**DEMAND FOR JURY TRIAL**

13 Civ. 2250 (KBF) (RLE)



## PRELIMINARY STATEMENT

      1.      This is a civil rights action brought by JAMES BELL("BELL") to seek relief for Defendants violation of his rights, privileges and immunities secured by the Civil Rights Act of 1871, 42 U.S.C. §1983, the Fourth and Fourteenth Amendment to the United States Constitution, Title VI of the Civil Rights Act of 1964, 42 U.S.C. §2000(d), *et seq.* ("Title VI"), and the Constitution and laws of the State of New York.

2. The Defendants in this action, The City of New York ("CITY"), New York City Police Commissioner RAYMOND KELLY ("KELLY"), the Mayor of New York MICHAEL BLOOMBERG ("BLOOMBERG") and New York City Police Officer MARCOS GONZALEZ ("GONZALEZ") Shied #27220, New York City Police Officer JESSICA RIVERA-CAICEDO ("RIVERA-CAICEDO") Shield #30298, New York City Police Officer JAMES GILSON ("GILSON") Shield #8085, New York City Police Officer CARL BENNETT ("BENNETT") Shield #29180 and JOHN DOE #3 have implemented and continuing to enforce, encourage and sanction a police, practice and/or custom of unconstitutional stops and frisks as well as false arrests of City residents by New York City Police Department.

3. Without the reasonable articulable suspicion required under the Fourth Amendment, NYPD officers have been, and are engaged in rampant stops and frisks of individuals, including Plaintiff. NYPD officers, in violation of the Equal Protection Clause of the Fourteenth Amendment, often have used, and continue to use race and/or national origin-not reasonable suspicion as the determinative factors in deciding to stop and frisk as well as individuals. The victims of such racial and/or national origins profiling are principally Black or Latino.

4. The abusive stop, question, search, citation, and arrest practices of New York City Police Department ("NYPD") officers in buildings enrolled in Operation Clean Halls ("Clean Halls Buildings") stand in stark contrast to the program's professed purpose, which is to combat illegal activity in apartment buildings with records of crime.

5. The NYPD's widespread constitutional abuses have flourished as a result of, and are directly and proximately caused by policies, practices and/or customs devised, implemented and enforced by CITY, KELLY and BLOOMBERG. The CITY, KELLY and BLOOMBERG have acted with deliberate Indifference to the constitutional rights of those who come into contact with NYPD officers by:

(a) failing to proper screen, train, and supervise NYPD officers, (b) inadequately monitoring NYPD officers and their stop and frisk practices, (c) failing to sufficiently discipline NYPD officers who engage in constitutional abuses, and (d) encouraging, sanctioning and failing to rectify the NYPD's unconstitutional practices.

6. As a direct and proximate result of defendants' policies, practice and/or customs, hundreds of thousands of City residents, in particular Black and Latino individuals, have been subjected to unconstitutional stop and frisks by NYPD officers. Indeed, many Black and Latino persons repeatedly have been victims of suspicionless stop and frisks by NYPD. Moreover, the NYPD's constitutional abuses have been attended by unlawful searches and seizures and, at times excessive force.

7. Plaintiff seeks injunctive and declaratory relief that the policies, practices and/or customs described herein violate the Fourth and Fourteenth Amendments. In addition, Plaintiff seeks compensatory and punitive damages, and award of attorney fees and costs, and such other relief as this Court deems equitable and just.

## JURISDICTION

8. This action is authorized by 42 U.S.C. §§1983 and 3616(a). Subject matter jurisdiction is conferred on this Court by 28 U.S.C. §§1331, 1343(a)(3), 1343(a)(4), and 1367(a).

9. Plaintiff's claims for declaratory and injunction relief are authorized by 28 U.S.C 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

10. Plaintiff further invoke this Court's supplemental jurisdiction, pursuant to 28 U.S.C. §1367 (a), over any and all state constitutional and state law claims that are so related to the claims within the original jurisdiction of this Court that they form part of the same case or controversy.

11.     Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §1391(b) and (c).

## JURY DEMAND

12.     Plaintiff demands trial by jury in this action on each and every claim.

## PARTIES

### Plaintiff

13.     Plaintiff JAMES BELL ("BELL") is a 44 year old African American man who resides in the City of New York, Borough of Manhattan. Bell resides in and/or visits neighborhoods where NYPD officers are and/or been deployed and conduct stop and frisks.

### Defendant

14.     Defendant THE CITY OF NEW YORK ("City") is a municipal entity created and authorized under the laws of the state of New York. It is authorized under the laws of the State of New York to maintain a police department, the NYPD, which act as its agent in the area of law enforcement and for which it is ultimately responsible. The CITY assumes the risks incidental to the maintenance of a police force and the employment of police offices. The NYPD's operations include the operations as described herein. On information and belief, the law enforcement activities of the NYPD are funded, in part, with funds from the federal government.

15.     Defendant RAYMOND KELLY is the Police Commissioner for the City of New York, with supervisory authority over all officers and operations of the NYPD, including responsibility for training, recruiting and managing all NYPD officers. He is sued in his official capacity.

16. Defendant Police Officer MARCOS GONZALEZ is or was an employee of the NYPD at all relevant times. He is sued in his official and individual capacity.

17. Defendant Police Officer JESSICA RIVERA-CAICEDO is or was an employee of the NYPD at all relevant times. She is sued in her official and individual capacity.

18. Defendant Police Officer James Gilson Shield #8085 is or was an employee of the NYPD at all relevant times. He is sued in her official and individual capacity.

19. Defendant Police Officer Carl Bennett Shield #29180 is or was an employee of the NYPD at all relevant times. He is sued in her official and individual capacity.

20. Defendant JOHN DOE #3 is a member of the NYPD whose full identity is not known to the Plaintiff, but who is an officer who participated in the encounter with the Plaintiff. He is sued in his official and individual capacity.

21. Defendant Mayor MICHAEL BLOOMBERG is and was at all time relevant herein, the Mayor of the City of New York and the chief policy making official for the City and its departments, including the NYPD. He is sued in his official and individual capacities.

22. At all times herein, Defendants GONZALEZ, RIVERA-CAICEDO, GILSON, BENNETT, JOHN DOE #3, KELLY and BLOOMBERG have acted under color of state law in the course and scope of their duties and functions as agents, employees, and officers of the City and/or the NYPD in engaging in the conduct described herein. At all times relevant herein, Defendants have acted for and on behalf of the City and/or the NYPD with the power and authority vested in them as officers, agents and employees of the City and/or the NYPD and incidental to the lawful pursuit of their duties as officers, employees and agents of the City and/or the NYPD.

23. At all times relevant herein, Defendants GONZALEZ, RIVERA-CAICEDO, GILSON, BENNETT, JOHN DOE #3, KELLY and BLOOMBERG have violated clearly established constitutional standards under the Fourth Amendments and Equal Protection Clause of the Fourteenth Amendments of which a reasonable person would have known.

## FACTS
### Operation Clean Halls

24. Operation Clean Halls is a citywide program operated by the NYPD that has existed in some form since 1991. In Manhattan there are at least 3,895 Clean Hall Buildings. The program operates under the names "Trespass Affidavit Program" and Formal Trespass Affidavit Program" in Manhattan and Brooklyn respectively. (All references in this complaint to "Clean Halls" or "Operation Clean Halls" refer to all such programs in all five boroughs.)

25. Enrollment of a private residential building in Operation Clean Halls is accomplished by virtue of an executed "Clean Halls affidavit" a boilerplate form on which a buildings address is filled in that is signed by a landlord or managing agent. Clean Halls affidavits state that NYPD officers have permission to enter enrolled buildings and arrest anyone found within who is engaged in criminal activity.

26. The NYPD has a widespread practice of stopping, questioning and searching those they encounter in Clean Halls Buildings without any suspicion of unlawful behavior, and arresting them or issuing summonses without probable cause. All tenants of the New York City's thousands of Clean Halls Buildings, their guest, and anyone in close proximity to the buildings are at risk of being subject to these unlawful practices.

27. The rights of Plaintiff has been infringed by the NYPD's practices of unlawfully stopping, questioning, searching, and arresting pursuant to Operation Clean Halls.

## Named Plaintiff

### James Bell

28. James Bell is a 44 year old black man who lives in Inwood section of Manhattan. For the past 30 years. On April 27, 2012 he was on West 207th Street when he was approached by GONZALEZ, GILSON, BENNETT and JOHN DOE #3, and thrown against store window on the corner of Post Avenue (Three Blocks away from Vermilyea Avenue)by JOHN DOE #1(Officer GILSON or Officer BENNETT). BELL asked why he was being stopped and being treated in such a manner. JOHN DOE #1 (Officer GILSON or Officer BENNETT) responded by saying where are the drugs. With no reasonable belief that BELL was armed, dangerous, and/or committed a crime, GONZALEZ and JOHN DOE #1 (Officer GILSON or BENNETT) began to search BELL. JOHN DOE #1(GILSON or BENNETT) indicated "where are the drugs." Bell informed officer that they had the wrong individual. GONZALEZ then proceeded to place BELL under arrest for Criminal Trespass.

29. BELL was placed in police van with other individuals that were arrested. Officers drove around for three hours arresting other individuals. BELL was later taken to the 34th Precinct, finger printed, searched and booked for Criminal Trespass. Nothing illegal was never recovered from BELL.

30. Later that evening, BELL was taken to Central Booking located at 100 Centre Street to see a judge. The next morning, BELL appeared before a judge and was released ROR.

31. BELL went to Court for nearly one year until the case was dismissed on January 23, 2013.

32.     At no time was BELL ever inside of 121 Vermilyea Avenue. These officers subjected Bell to a suspicionless stop, frisk, unlawful search and arrest based on his race without probably cause.

### The NYPD Has a Practice of Stopping, Questioning, Searching, and Arresting Individuals Exiting, Entering, Or Walking Near Clean Halls Buildings Without Justification

33.     The experiences of the individual Plaintiff do not constitute isolated incidents. Rather, they are part of a larger pattern and practice that exists within private residential buildings enrolled in Operation Clean Halls. The challenged policies and practices are so widespread and frequent as to constitute a custom and usage of the NYPD.

34.     The City of New York and Commissioner Kelly (together, "City-Defendants") have enforced, promoted, authorized, and sanctioned the NYPD's customs and practices of stopping, questioning, searching, arresting, and citing individuals, for their mere presence in and around Clean Halls Buildings.

35.     NYPD officers also frequently stop people on sidewalks simply because they have exited a Clean Halls Building, are entering a Clean Halls Building, or are merely standing or walking near a Cleans Hall Building (BELL was never near 121 Vermilyea Avenue).

36.     The stop, question, search, citation, and arrest practices of NYPD officers in and around Clean Halls Buildings are so customary as to constitute official municipal policy. Many residents of Clean Halls Buildings are subjected to these practices on a routine basis, including some who are stopped, questioned, and searched nearly everyday. These practices constitute just one part of a citywide phenomenon of systematic suspicionless stops and arrests of individuals in and around certain low-income areas.

8

### The NYPD's Unlawful Stop, Question, Search, Citation, and Arrest Practices and Around Clean Halls Buildings Result From Improper and Inadequate Training and Supervision

37. Unlawful stops, searches, summonses and trespassing arrests in and around Clean Halls Buildings results from the improper training and instruction of NYPD officers on the appropriate bases for those actions. For example, upon information and belief, the NYPD trains officers to stop and question any person they encounter in a Clean Halls Building-even if there are no additional facts that make the person's presence in or outside of the building suspicious. Further, the NYPD has failed to implement any safeguards against unlawful arrests in connection with Operation Clean Halls. This pressure is not balanced by adequate training on legal standards.

38. Upon information and belief, the current training program does not include sufficient instruction on the elements of the offenses concerning trespassing in New York's Penal Law or the proper standards for and extent of frisks and searches. In particular, the current training program does not make clear that mere presence in or around a Clean Halls Building does not provide a sufficient basis to stop an individual and that mere presence in a Clean Halls Building is sufficient to provide probable cause for an arrest.

39. City-Defendants have failed to supervise and discipline NYPD officers who unlawfully stop, question, seize, search, and arrest individuals for trespassing. Upon information and belief, City-Defendants do not monitor improper stops, seizures, and searches for trespassing in Clean Halls Buildings. Nor have City-Defendants instituted any follow up procedure or disciplinary action when charges are dismissed or where it is otherwise established that an individual was arrested without probably cause.

### Deliberate Indifference in Failure to Train and Supervise

40. City-Defendants have been aware of the incidents described above and the stop, question, search, and arrest practices of NYPD officers in and around Clean Halls Buildings for several years. Yet City-Defendants have been deliberately indifferent to these practices and have not attempted to remedy them.

41. City-Defendants have received notice of the NYPD's stop, question, search, and arrest practices in Clean Halls Buildings. City-Defendants are aware of the CCRB review of complaints lodged in connection with stops in Clean Halls Buildings that revealed a high substantiation rate compared to stops at other locations. City-Defendants are also aware of the high rate of declinations to prosecute trespass arrestees, the judicial admonitions relaying the high frequency of baseless and unlawful trespass arrests, and the class action litigation, Davis v. City of New York, No. 10-Civ-699, that has been pending in the Southern District of New York since January 2010 and challenges the NYPD's stop, question, and arrest practices in NYCHA Residences, which are virtually identical to those at issue in Clean Halls Buildings.

42. Until June 2010, the sections of the NYPD Patrol Guide that governed the use of vertical patrols in Clean Halls Buildings on one hand, and NYCHA Residences on the other, were virtually indistinguishable.

43. Section 212-59 of the Patrol Guide, which remains in effect, governs vertical patrols in Clean Halls Buildings. It directs commanding officers to "[o]btain permission of building owner/authorized agent to conduct vertical patrol when private property is involved" and provides that uniformed patrol officers should "[c]onduct vertical patrol of assigned location and take appropriate police action."

44.     On June 8, 2010, the NYPD issued Interim Order No. 23 ("Interim Order"), which addresses vertical patrols in NYCHA Residences and which superseded Section 212-60. The Interim Order provides that "an officer may not stop (temporarily detain) a suspected trespasser unless the officer reasonably suspects that the person is in the building without authority." It further provides that following a stop an officer should "[a]pproach the person(s) and ask; (1) If he or she lives in the building (2) If he or she is visiting someone in the building (3) If he or she has business in the building." The Interim Order also directs as follows: "When a person's authority to be present in the building is in question, take reasonable measures to verify such authority (e.g., asking for identification, a key to the building entrance doors, etc.)." The Interim Order directs, "If a person refuses to explain or is unable to explain his or her presence in the building, the officer may instruct the person that he or she must leave the building or be subject to arrest for trespass. The officer may then arrest the person for trespass if: (1) The person refuses to exit the building and does not promptly establish a right to be in the building." The NYPD began training officers to comply with the Interim Order in the fall of 2010.

### Recent Measures Are Inadequate and Insufficient to Eradicate, Curb or Deter the Suspicionless Stop and Frisk Policy

45. Pursuant to the Stipulation in *Daniels, et al, v. The City of New York* Defendant City and the NYPD were required to implement a written police which prohibits racial or ethic/national origin profiling which violates the United States and New York State Constitutions. As explained herein, Defendants have violated that written policy. Defendant City and the NYPD were also required *inter alia*, tosupervise, monitor and train officers and supervisors regarding the policy prohibiting unlawful racial profiling; to conduct supervision and monitoring of the policy through audits by the NYPD Quality Assurance Division that determine whether, and to what extent, the audited stop, question and frisk activity is base upon reasonable suspicion; to require that NYPD officers and supervisors document stop, question and frisk activity in UF-250 forms, memo books, logs and monthly activity reports; to compile a database of all UF-250 reports; to conduct public information and outreach

through community forums, high school workshops and distribution of materials informing the public about their rights concerning stop, question and frisk encounters and making complaints about concerns arising from a stop, question and/or frisk encounter with the police.

46. None of these measures, however, sufficiently or adequately have addressed, much less irrevocably eradicated, curbed or deterred the NYPD's pervasive policy, practice and/or custom of unconstitutional stops and frisks. Thus, despite these initiatives, Plaintiff was a victim of the NYPD's constitutional abuses in violation of the Fourth and Fourteenth Amedments to the U.S. And New York State Constitutions.

## DEFENDANT"S KNEW PLAINTIFF NEVER ENTERED, EXITED, OR WAS OUTSIDE OF CLEAN HALLS BUILDING

47. On May 31, 2013, Plaintiff received documents (Arrest Report) from CITY's Counsel, which indicates that RIVERA-CAICEDO, informed GONZALEZ, that BELL was inside of 121 Vermilyea Avenue. It states, "Defendants was in above location without permission or authority to be there. Building is clearly marked that the building is for tenants and their guest only.

48. Arrest report does not indicate if further verification was done to verify if BELL was in building, why he was there and who he was visiting as required. Upon information and belief, NYPD officers who patrol in and around Clean Halls Buildings are trained and instructed that when a person who has been asked or ordered to show identification or otherwise justify his presence in a Clean Halls building and the person refuses or declines to do so, such a response constitutes probable cause that the individual is trespassing.

49. Upon information and belief, there are procedures for the conduct of vertical patrols inside TAP buildings, with an emphasis on trespass arrests. Upon further information and belief, there is explicit guidance regarding when stops are lawful based on the suspicion of trespass in a TAP building. Surely, stops outside TAP buildings require reasonable suspicion, and that merely exiting a TAP building is insufficient to establish reasonable suspicion, even in a high crime area.

50. At no time did BELL enter, exit, or was anywhere outside of Clean Halls Building located at 121 Vermilyea Avenue.

51. Defendant RIVERA-CAICEDO's blatant false statement of BELL is what led to unconstitutional violation of BELL

52. Defendant RIVERA-CAICEDO knew Bell was not individual in question when he was falsely stopped three city blocks away from Clean Halls Building.

## CLAIMS FOR RELIEF
### FIRST CAUSE OF ACTION:
### VIOLATIONS OF THE FOURTH AMENDMENT TO THE U.S. CONSTITUTION

53. As a direct and proximate result of the acts and omissions of the Defendants, the Plaintiff has been deprived of his rights under the Fourth Amendment to the United States Constitution and 42 U.S.C. § 1983.

## SECOND CAUSE OF ACTION:
### INFRINGEMENTS OF THE RIGHTS OF SUBSTANTIVE DUE PROCESS IN VIOLATION OF FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION

54. As a direct and proximate result of the acts and omissions of the Defendants, the Plaintiff has been deprived of his rights under the Fourteenth Amendments to the United States Constitution and 42 U.S.C. §1983.

## THIRD CAUSE OF ACTION:
### VIOLATIONS OF ARTICLE 1, SECTION 12 OF THE NEW YORK CONSTITUTION

55. As a direct and proximate result of the acts and omissions of the Defendants, the Plaintiff has been deprived of his rights under Article 1, Section 12 of the New York Constitution.

56. The unlawful stops, searches, false arrests, and false imprisonment of the Plaintiff were the direct and proximate result of a policy or practice of the City.

## FOURTH CAUSE OF ACTION:
### FALSE ARREST, FALSE IMPRISONMENT, ASSAULT AND BATTERY IN VIOLATION OF NEW YORK COMMON LAW

57. As a direct and proximate result of the acts and omissions of the Defendants, the Plaintiff has been deprived of his rights under New York common law to be free from false arrest, false imprisonment, assault, and battery.

## FIFTH CAUSE OF ACTION:
## MALICIOUS PROSECUTION IN VIOLATION OF NEW YORK COMMON LAW

58.  Police Officers GONZALEZ, RIVERA-CAICEDO, GILSON, BENNETT JOHN DOE #3 charged BELL with trespassing falsely, maliciously, in bad faith, and without probable cause.

## SIXTH CAUSE OF ACTION:
## RESPONDEAT SUPERIOR AGAINST CITY UNDER NEW YORK COMMON LAW

59.  The conduct of the Defendants GONZALEZ, RIVERA-CAICEDO, GILSON, BENNETT, JOHN DOE #3 occurred while they were on duty, in and during the course and scope of their duties and functions as New York City police officers, and while they were acting as agents and employees of defendant CITY. As a result, Defendant CITY is liable to Plaintiff under the doctrine of respondeat superior.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court will:

1. Assume jurisdiction over this matter;

a) Issue a judgment declaring that the NYPD's policy, practice and/or custom of suspicionless stop and frisks challenged herein is unconstitutional in that it violates the Fourth and Fourteenth Amendment to the United States Constitution, Title VI, and the Constitution and laws of State of New York, and that its implementation, enforcement and sanctioning by NYPD officers is a direct and proximate result of the following policies, practices and/or customs of the CITY, KELLY and BLOOMBERG:

       i)   failing to adequately, screen, train and supervise officers;

       ii)  failing to adequately monitor the NYPD and its officers and discipline those NYPD officers who violate the constitutional rights of residents of the community they patrol; and

       iii) encouraging, sanctioning, and failing to rectify the NYPD's unconstitutional stop and frisks.

b)    Award Plaintiff compensatory and punitive damages in the amounts that are fair, just and reasonable, to be determined at trial;

c)    Award Plaintiff damages against Defendants CITY, KELLY, BLOOMBERG, GONZALEZ, RIVERA-CAICEDO, GILSON, BENNETT, JOHN DOE #3, to the extent that their liability is based upon reprehensible actions and/or inaction undertaken in their official and individual capacities, in and amount which is fair, just and reasonably designed to punish and deter said reprehensible conduct, to be determined at trial;

d)    Award Plaintiff reasonable attorney's fees pursuant to 42 U.S.C. §1988;

e)    Award Plaintiff costs of suit pursuant to 42 U.S.C. § 1920 and 1988; and

f)    Award such other and further relief as this Court may deem appropriate and equitable, including declaratory relief as may be required in the interests of justice.

Case 1:13-cv-02250-KBF   Document 31   Filed 07/17/13   Page 17 of 18

Dated:    New York, New York
          July 16, 2013

                                            James Bell, *Pro Se*
                                            3784 10th Avenue Apt. 3A
                                            New York, NY 10034
                                            (212)569-7012

                                            _____
                                            James Bell, *Pro Se*

To:  Michael A. Cardozo, Corporation Counsel (By First-Class Mail)
     100 Church Street, Room 3-212
     New York, NY 10007

17

UNITED STATES DISCTRIC COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

JAMES BELL,

                                        Plaintiff,

            -against-                                         **AFFIRMATION OF SERVICE**

                                                                       13 Civ. 2250 (KBK) (RLE)

THE CITY OF NEW YORK; NEW YORK CITY
POLICE COMMISSIONER RAYMOND KELLY;
MAYOR MICHAEL BLOOMBERG; NEW YORK
CITY POLUCE OFFICER MARCOS GONZALEZ
SHIELD #27220; NEW YORK POLICE OFFICER
JESSICA RIVERA-CAICEDO SHIELD#30298;
NEW YORK POLICE OFFICER JAMES GILSON
SHIELD #8085; NEW YORK POLICE OFFICER
CARL BENNETT SHIELD #29180;NEW YORK
CITY POLICE OFFICER JOHN DOE #3

                                        Defendants.

-----------------------------------------------------------------x

      I, James Bell, **affirm under penalty of perjury** that I have served a copy of the attached **Second Amended Complaint,** upon Michael A. Cardoza, Corporation Counsel, Attorney for Defendants whose address is 100 Church Street Rm. 3-212 , New York, NY 10007 by First Class Mail.

Dated:  New York, New York
           July 16 , 2013

                                                             James Bell, *Pro Se*
                                                              3784 10th ave Apt. # 3A
                                                              New York, NY 10034
                                                               212-569-7012